JS 44 (Rev. 11/04)

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Ambulatory Surgical Services, Inc.; and<br>Mark S. Etter, M.D.; | Abington Memorial Hospital; and<br>Abington Memorial Hospital Foundation |

| (b) County of Residence of First Listed Plaintiff :Montgomery County, PA<br>(EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |
|---|---|
| (c) Attorney's (Firm Name, Address, and Telephone Number)<br><br>Carl W. Hittinger, Esq.<br>Lesli C. Esposito, Esq.<br>Matthew A. Goldberg, Esq.<br>John D. Huh, Esq.<br>DLA Piper US LLP<br>1650 Market Street, 49th Floor<br>Philadelphia, PA 19103<br>(215) 656-2449 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury—Med. Malpractice<br>☐ 365 Personal Injury—Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☒ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |

**V. ORIGIN** (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Sherman Antitrust Act, 15 U.S.C. Section 2

Brief description of cause:
Antitrust, breach of contract, breach of fiduciary duty and violation of Pennsylvania Whistleblower Law.

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

American LegalNet, Inc. www.USCourtForms.com

**VIII. RELATED CASES** (See Instructions)
**IF ANY**

| | JUDGE | | DOCKET NUMBER |
|---|---|---|---|

DATE
March 12, 2008

SIGNATURE OF ATTORNEY OF RECORD
Carl W. Hittinger, Esq.

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____

American LegalNet, Inc.  www.USCourtForms.com

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Ambulatory Surgical Services, Inc.; and<br>Mark S. Etter, M.D. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| Abington Memorial Hospital; and Abington<br>Memorial Hospital Foundation | : | NO. |
| | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255.　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)　　( X )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　( )

| | | |
|---|---|---|
| March 12, 2008 | Carl W. Hittinger, Esquire | Ambulatory Surgical Services, Inc.<br>and Mark S. Etter, M.D. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| | | |
| 215-656-2449 | 215-606-2149 | carl.hittinger@dlapiper.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

American LegalNet, Inc.<br>www.USCourtForms.com

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:    AMBULATORY SURGICAL SERVICES, INC.
1327 Old York Road
Abington, PA 19001

MARK S. ETTER, M.D.
1145 Herkness Drive
Meadowbrook, PA 19046

Address of Defendant: ABINGTON MEMORIAL HOSPITAL
1200 Old York Road
Abington, PA 19001

ABINGTON MEMORIAL HOSPITAL FOUNDATION
1245 Highland Avenue, Box 1
Abington, PA 19001

Place of Accident, Incident or Transaction:  Montgomery County, PA
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes ☐ No **X**

Does this case involve multidistrict litigation possibilities?     Yes ☐ No **X**

*RELATED CASE, IF ANY:*

Case Number: _____    Judge _____    Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

Yes ☐ No **X**

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

Yes ☐ No **X**

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?

Yes ☐ No **X**

CIVIL: (Place X in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts

2. ☐ FELA

3. ☐ Jones Act-Personal Injury

4. **X** Antitrust

5. ☐ Patent

6. ☐ Labor-Management Relations

7. ☐ Civil Rights

8. ☐ Habeas Corpus

9. ☐ Securities Act(s) Cases

10. ☐ Social Security Review Cases (Please specify)

11. ☐ All other Federal Question Cases
(Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts

2. ☐ Airplane Personal Injury

3. ☐ Assault, Defamation

4. ☐ Marine Personal Injury

5. ☐ Motor Vehicle Personal Injury

6. ☐ Other Personal Injury (Please specify)

7. ☐ Products Liability

8. ☐ Products Liability — Asbestos

9. ☐ All other Diversity Cases

## ARBITRATION CERTIFICATION

*(Check appropriate Category)*

I, Carl W. Hittinger, counsel of record do hereby certify:

X Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: __March 12, 2008_____          _____Carl W. Hittinger_____          _____30250_____
                                                              Attorney-at-Law                                              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____March 12, 2008_____          _____Carl W. Hittinger_____          _____30250_____
                                                              Attorney -at-Law                                              Attorney I.D. #

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Ambulatory Surgical Services, Inc.**, 1327 Old York Road Abington, PA 19001 | |
| **Mark S. Etter, M.D.,** 1145 Herkness Drive Meadowbrook, PA 19046 | |
| Plaintiffs, | |
| v. | **CIVIL ACTION NO.** _____ |
| **Abington Memorial Hospital,** 1200 Old York Road Abington, PA 19001 | **JURY TRIAL DEMANDED** |
| **Abington Memorial Hospital Foundation** 1245 Highland Avenue, Box 1 Abington, PA 19001 | |
| Defendants. | |

### FIRST VERIFIED COMPLAINT

Plaintiffs Ambulatory Surgical Services, Inc. ("ASSI") and Mark S. Etter, M.D., by and

through their undersigned counsel, DLA Piper US LLP, bring this Complaint against defendants

Abington Memorial Hospital and Abington Memorial Hospital Foundation (collectively "AMH"

or "defendants").

### NATURE OF THE ACTION

1.    ASSI brings the instant action against defendants for engaging in anticompetitive

and predatory conduct in violation of § 2 of the Sherman Act, 15 U.S.C. § 2.  ASSI also asserts

- 1 -

claims for related breach of contract and breach of fiduciary duty against defendants. Plaintiff Mark S. Etter, M.D., brings an individual (but related claim) against defendants for violating the Whistleblower Law. 43 Pa. Cons. Stat. Ann. §§ 1421-1428.

2. On October 1, 2007, defendant Abington Memorial Hospital purchased Warminster Hospital from Solis Healthcare, LP, thereby significantly increasing its market share in the provision of outpatient surgical procedures and services, including pain services, in Montgomery County and those portions of Bucks and Philadelphia Counties that border Montgomery County. Since the purchase of Warminster Hospital, located in a section of Bucks County bordering Montgomery County, defendants have engaged in additional anticompetitive and predatory conduct that violates § 2 of the Sherman Act. As a proximate result of defendants' conduct, ASSI, who competes against AMH, has suffered or will continue to suffer economic injury and irreparable harm that warrants the entry of injunctive relief.

3. In addition, AMH has violated Pennsylvania's Whistleblower Law. Plaintiff Mark S. Etter, M.D., an AMH employee, reported, in good faith, AMH's violation of the Sherman Antitrust Act and other ethical and legal compliance issues to his supervisors and employer, including AMH's President and Chief Executive Officer Richard L. Jones, Jr. in the past 180 days. As a result of Dr. Etter's report and threatened litigation, AMH took illegal and retaliatory conduct against Dr. Etter, including threatening and attempting to remove him from his employment as long time Chair of the Department of Anesthesia of AMH.

4. Further, by acquiring Warminster Hospital and providing outpatient surgical procedures and services on its premises, AMH has directly and materially breached the provisions of its 1989 Partnership Agreement ("the Agreement") with ASSI. The parties entered into the Agreement for the purpose of forming a partnership to establish and operate an

outpatient surgical center, the Abington Surgical Center ("the Center"). The Agreement contains a noncompetition clause explicitly prohibiting each partner from participating— through ownership, management or otherwise—in any enterprise providing outpatient surgical procedures or services at any location within a radius of five miles from the Center. The only exception are changes and additions to AMH's main campus at 1200 Old York Road, which is approximately 4 miles from the Center. AMH materially breached the Agreement by, among other things, directly competing with the Center by owning and providing outpatient surgical procedures and services at its facility at the former Warminster Hospital site, which is located approximately 3.2 miles from the Center.

5.    AMH's provision of outpatient surgical procedures and services at its Warminster facility also constitutes a breach of AMH's fiduciary duty to ASSI because AMH acted in knowing disregard of ASSI's rights, through conduct that is not in the best interests of the Center, including competing against the Center through its Warminster facility and by targeting and attempting to lure physicians (and their patients) away from the Center and AMH's main campus to AMH's Warminster facility.

6.    AMH's flagrant, intentional and illegal conduct warrants the imposition of actual and treble damages, punitive damages, injunctive relief, attorneys fees and costs, and all other relief afforded by law, and which the Court deems just and proper.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the federal antitrust claim pursuant to 28 U.S.C. § 1331, as well as 15 U.S.C. § 4. This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.    Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because a substantial number of acts, omissions, and transactions that give rise to this action were committed, occurred, or otherwise arose within this District.

## THE PARTIES

9.    ASSI is a Pennsylvania corporation with a mailing address at 1327 Old York Road, Abington, Pennsylvania 19001. The shareholders of ASSI, owning equal shares, are Mark S. Etter, M.D., David M. Junkin, M.D. and Barry L. Glaser, M.D.

10.    Mark S. Etter, M.D. has served as the Chair of the Department of Anesthesia at AMH since 1988 and member of AMH's Executive Committee since 1986 as well as the Medical Director of the Center. He resides at 1145 Herkness Drive, Meadowbrook, PA 19046.

11.    David M. Junkin, M.D. has served as Chief of Division of Orthopedic Surgery at AMH, President of the Medical Staff at AMH, member of the Executive Committee of AMH, Member of the Board of Trustees ex officio at AMH as well as the Medical Director of the Center. He resides at 10 High Point East, Huntingdon Valley, PA 19006.

12.    Barry L. Glaser, M.D. has served as member of the Executive Committee of AMH, President of Ex-Residents Association of AMH and was Physician of the Year at AMH in 2005. He resides at 1521 Amity Road, Rydal, PA 19046.

13.    Abington Memorial Hospital is a Pennsylvania corporation primarily headquartered at 1200 Old York Road, Abington, Pennsylvania 19001. Abington Memorial Hospital receives both federal and state funding.

14. Abington Memorial Hospital Foundation is a Pennsylvania corporation with a mailing address at 1245 Highland Avenue, Box 1, Abington, Pennsylvania 19001 and is affiliated with Abington Memorial Hospital.

## OUTPATIENT SURGICAL PROCEDURES AND SERVICES

15. Outpatient surgical procedures and services are performed on individuals the same day as their travel to and from the medical facility and do not require overnight hospitalization. These services include pain, gastrointestinal and medical therapeutic services. This results in convenience for the patient and cost savings.

16. Due to the inherent nature of outpatient surgical procedures and services, patients do not typically travel lengthy distances for such procedures and services unless such surgical procedures and services are not within their immediate geographic area or for some other compelling reason. Therefore, outpatient surgical centers usually service a geographic area within less than a day's driving distance of the center unless other surgical centers are more proximate to the patient's residence.

17. For over 90 years, Abington Memorial Hospital has provided surgical procedures and services at its main campus, and outpatient services since 1983, at its 40 acre Schilling Campus, which is located at 2701 Blair Mill Road, Willow Grove, Pennsylvania, less than 5 miles from AMH's main facility.

18. AMH primarily provides outpatient surgical procedures and service to residents of Montgomery County and to some residents of Bucks and Philadelphia Counties that border Montgomery County, through its main Hospital facility and the Center.

19.   In 1984, AMH's primary competitors were Warminster Hospital, Rolling Hill Hospital, Holy Redeemer Hospital and Chestnut Hill Hospital.  AMH's main facility is 6.2 miles from Warminster Hospital.

20.   Since 1984, Rolling Hill Hospital, later Elkins Park Hospital, an admitted major competitor of AMH in the provision of outpatient surgical procedures and services, has closed and ceases to provide outpatient surgical procedures and services.

21.   In 1984, a Certificate of Need application was filed for construction of the Center. AMH supported the Certificate of Need application and reviewed and agreed to the facts stated therein.  In the consistent application, it was represented that AMH's operating suites were at full capacity due to its large share of the market for surgical procedures (in some areas in excess of 50% of the market for surgical procedures) and, as a result, the Center was claimed to be needed to help alleviate the demands of AMH's large market share.

22.   Warminster Hospital filed a challenge to the Certificate of Need that was issued to ASSI permitting ASSI to open the Center, attempting to prevent the Center from opening, an action it would and could take only if it believed it competed with the Center.  Moreover, the State Health Facility Hearing Board found on April 15, 1986 that Warminster Hospital was located in the same health services area as the Center.

23.   The appeal process was exhausted after which the Certificate of Need was issued on or about June 28, 1989.  Thereafter, AMH entered into a 50% partnership agreement with ASSI to establish and operate the Center as an outpatient surgical center located in Montgomery County at 2701 Blair Mill Road, Willow Grove, Pennsylvania.

24.   By defendants' own recent admission, the Center is "by far and away the largest and most dominant ASC (Ambulatory Surgical Center) in the two counties (Bucks and

- 6 -

Montgomery County)". See Defendants' Memorandum of Law in Support of Motion for
Protective Order ("Defendants' Memorandum") at p. 9, ftnt 3, filed in Civil Action No. 08-
03119 (Mont. Cty.). AMH also admitted publicly in October 2007 that it provides "medical
care and health services to residents of Bucks, Montgomery and Philadelphia counties." It also
stated that, "AMH is the preferred hospital in the area with more than one-third of patients
from the Warminster service area choosing AMH for their healthcare needs. Currently,
Warminster Hospital serves one out of ten patients in its community for hospital care,
according to independent marketing data."

25.    From July 1, 2005 through June 30, 2006, 18,434 outpatient surgical procedures
were performed at the Center compared to 9,346 procedures performed at the next largest
provider of outpatient surgical procedures in the area, Hillmont Endoscopy Center, which is
located 8.9 miles from the Center.

See Defendants' Memorandum at 9, ftnt 3; citing

www.dsf.health.pa.us/health/lib/health/faciliites/directories/20052005HOSPITALASCDIREC
TORY.pdf.

26.    Presently, AMH has continued to provide additional outpatient surgical
procedures and services at AMH believed in excess of 5,000 per year. Since 1984, AMH has
vastly increased its capacity to provide outpatient surgical procedures and services with the
addition of 8 new operating suites at the main Hospital, for a total of 23 operating suites
presently available to perform outpatient surgical procedures and services at AMH, as well as
at the Center, of which it is a 50% owner. This combined capacity between the two facilities
compromises the largest number of surgical suites in the relevant geographic market thereby
making AMH the dominant provider of outpatient surgical procedures and services in

Montgomery County and those portions of Bucks and Philadelphia Counties that border Montgomery County.

27.   On or about October 1, 2007, AMH purchased all the assets and liabilities of Warminster Hospital from Solis Healthcare, L.P. AMH has now assumed complete control over the management and operation of Warminster Hospital from Solis Healthcare, L.P.

28.   AMH presently provides outpatient surgical procedures and services, including pain, at its Warminster facility. AMH plans to substantially expand the provision of these services in the near future and to make a significant capital expenditure to do so. Physicians on staff at AMH are granted similar staff privileges at AMH's Warminster facility.

29.   AMH, Warminster Hospital, and the Center are direct competitors in the market for providing outpatient surgical procedures and services.

30.   By acquiring Warminster Hospital, AMH further increased its dominant share of the market for outpatient surgical procedures and services.

31.   AMH's market share for the provision of outpatient surgical procedures and services is presently comprised of the combined outpatient surgical procedures and services provided through its main Hospital facilities, its 50% ownership of the Center, and now its Warminster facility at the former Warminster Hospital site. AMH's combined share of the outpatient surgical procedures and services market in the relevant geographic market rises to the level of a monopoly.

32.   AMH has engaged in anticompetitive and predatory conduct in an attempt to monopolize and to further its monopoly of the outpatient surgical procedures and services market, including: breaching its Partnership Agreement with ASSI; breaching the fiduciary

duty owed to ASSI by AMH; and engaging in predatory conduct by attempting to lure physicians and patients away from the Center to AMH's new Warminster facility.

33. AMH's anticompetitive conduct was undertaken to foreclose competition, gain a competitive advantage, and diminish the market share of its competitors, including ASSI as 50% owner of the Center. AMH's conduct was not undertaken for any legitimate business reason.

34. AMH's anticompetitive conduct serves to contribute significantly to AMH maintaining its monopoly power.

35. As a result of defendants' anticompetitive and predatory conduct, defendants represent a real threat of injury to ASSI, the public, and to competition in the relevant product market for outpatient surgical procedures and services in the relevant geographic market.

36. By engaging in the aforementioned anticompetitive and predatory conduct, defendants have violated § 2 of the Sherman Act, 15 U.S.C. § 2.

37. Thus, the conduct of defendants should be enjoined in accordance with §16 of the Clayton Act, 15 U.S.C. § 26.

## THE PARTNERSHIP AGREEMENT

38. On or about June 28, 1989, AMH and ASSI entered into a partnership agreement to provide outpatient surgical procedures and services at the Center. A true and correct copy of the executed Agreement is attached hereto as Exhibit A.

39. The parties provided adequate consideration for the provisions of the Partnership Agreement, including a contribution of $50,000.00 toward the capital of the Partnership and an agreement to act in the best interests of the Partnership.

40. When the parties were negotiating the Agreement, AMH insisted upon a

noncompetition clause to protect itself against ASSI attempting to acquire, manage or operate

any other outpatient surgical centers that did or would compete against the Center or AMH.

The clause was also originally included for purposes of obtaining a Certificate of Need because

it insured that the Center would be the sole source of outpatient surgical procedures services to

alleviate the (represented) overcapacity at AMH's main facility.

41. For those purposes, Paragraph 9 of the Agreement contains a noncompetition

clause, which was drafted and modified by AMH. See Exhibit B. The noncompetition clause,

as finally agreed upon, provides:

> 9. Noncompetition. Each Partner agrees that during the existence
> of the Partnership it will not enter into, manage, operate or
> otherwise participate in any enterprise, including any partnership,
> joint venture or other arrangement, providing outpatient surgery
> services at any location within a radius of five miles of the Center.
> The foregoing shall not apply to the Center and any existing
> facilities at the date of this Agreement, including any subsequent
> changes, alterations or additions to the AMH operating suites,
> provided that any such changes or alterations or additions are not
> undertaken with the intent, or have the effect, of competing in a
> manner adverse to the Center. If the Partnership is dissolved upon
> the occurrence of an Event of Default, then as to the defaulting
> Partner the provisions of this Section 9 shall remain in the effect
> for a period of two years following the dissolution of the
> Partnership.

Partnership Agreement ¶ 9 (emphasis added).

42. In turn, paragraph 8.1 of the Agreement further obligates the partners to cooperate

fully with each other and act in the best interests of the Partnership: "Each of the parties hereto

shall cooperate fully with one another and shall use its best efforts to develop and operate the

Center as contemplated by this Agreement." Partnership Agreement ¶ 8.1 (emphasis added).

43.    The Agreement also contains a waiver clause, which provides:

> 8.5  Waiver.  No term, covenant or warranty contained in this Agreement shall be deemed waived and no breach shall be deemed excused unless such waiver or consent shall be in writing signed by the party claimed to have so waived or consented.  No consent by any party or waiver of any beach or default by another party hereto shall constitute a consent to or waiver of any different or subsequent breach or default by such party.

Partnership Agreement ¶ 8.5 (emphasis added).  ASSI has not, nor has it ever, waived in writing or otherwise, the application of paragraph 9.

44.    In light of the duties imposed by the Partnership Agreement upon the partners, ASSI has declined several opportunities since 1989 to invest in or manage other outpatient surgical centers and related real estate, including, for example, the Huntington Valley Center and the present location of the Wills Eye Surgical Center which is within 5 miles of the Center as well as a Norristown surgical center and Richboro MRI Center, which are beyond the 5 mile radius of the Center.  These declined opportunities were discussed with Richard Jones and others at AMH.

45.    AMH's Warminster facility, at the former Warminster Hospital site, is located approximately 3.2 miles from the Center and continues to compete against the Center in providing outpatient surgical procedures and pain services to patients in the relevant geographic market.

46.    As a result of its acquisition of Warminster Hospital, AMH now provides, among other things, outpatient surgical procedures and services (including competing pain) at the Warminster site, which is in violation of paragraph 9, as well as paragraph 8.1, of the Agreement.

47. By providing outpatient surgical procedures and services at Warminster Hospital, AMH has acted, and continues to act, in a manner directly adverse to the interests of ASSI, the Partnership and the Center.

48. In a letter dated November 30, 2007, ASSI, through its undersigned counsel, notified Richard Jones that the provisions of the Partnership Agreement explicitly prohibited AMH from providing outpatient surgical procedures and services at its newly acquired Warminister facility. A true and correct copy of that letter is attached as Exhibit C.

49. In response, AMH has maintained that it has not breached the Agreement since, it asserts, the Warminster facility does not compete against the Center, even though it is only 3.2 miles from the Center.

50. AMH has also admitted, through its officers and agents, that it did not know of the provisions of paragraphs 9 or 8.1 when it acquired Warminster Hospital and has further admitted that it was in error in not reviewing the provisions of the Partnership Agreement with ASSI before consummating the Warminster acquisition, which it has said was done on an expedited basis. AMH has also admitted that it purchased Warminster Hospital primarily to prevent competitors Doylestown and Holy Redeemer Hospitals, or other potential competitors like Temple University Hospital, from doing so, thereby further ensuring its dominant competitive market position.

51. Nevertheless, despite now being placed on notice of the provisions of paragraphs 9 and 8.1, AMH continues to provide outpatient surgical procedures and services at Warminster Hospital and thereby directly compete with the Center, of which it is a 50% owner.

52. ASSI has sought to cause AMH to agree to cease providing outpatient surgical procedures and services at the Warminster site, which AMH has adamantly refused to do,

claiming that the Warminster facility does not compete against the Center so the Center will not be injured.

53.   AMH's conduct has, among other things, caused and will continue to cause ASSI and the Center to lose physicians and patients and suffer economically.

## COUNT I
## ATTEMPTED MONOPOLIZATION IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT, 15 U.S.C. § 2.
### (ASSI v. AMH)

54.   ASSI incorporates herein by reference each and every allegation contained in paragraphs 1 through 53, as though set forth fully herein.

55.   Section 2 of the Sherman Antitrust Act provides as follows: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony ..." 15 U.S.C. § 2.

56.   For purposes of this First Verified Complaint, the relevant product market is defined as outpatient surgical procedures and services, including pain services.

57.   For purposes of this First Verified Complaint, the relevant geographic market is defined as Montgomery County and those portions of Bucks and Philadelphia Counties that border Montgomery County.

58.   AMH has attempted to monopolize the relevant product market in the relevant geographic market in violation of §2 of the Sherman Act, 15 U.S.C. §2.

59.   This illegal conduct will continue unless the relief requested is granted.

60.   For the purpose of attempting to monopolize the market in outpatient surgical procedures and services, in violation of Section 2 of the Sherman Act, AMH has engaged in the following presently known predatory and anticompetitive forms of conduct:

(a)   AMH acquired Warminster Hospital on or about October 1, 2007. By and through this acquisition, AMH has acquired dominant market power for outpatient surgical procedures and services in the relevant geographic area and thereby reduced competition;

(b)   AMH breached its Partnership Agreement with ASSI by providing competitive outpatient surgical procedures at another acquired facility (i.e. Warminster) within a five mile radius of ASSI, in an effort to expand its market share and prevent other competitors or potential competitors, like ASSI, from acquiring the Warminster facility and as a result maintain and strengthen its monopoly power.

(c)   AMH breached its fiduciary duty to ASSI by providing outpatient surgical procedures and services at its newly acquired Warminster facility, in direct competition with ASSI in an attempt to expand its market share and maintain and strengthen its monopoly power;

(d)   AMH thereafter undertook conduct intended to lure physicians away from AMH and the Center to its newly acquired Warminster facility, subsequently driving physicians, patients and revenue away from the Center and towards AMH's Warminster facility in an attempt to expand AMH's market share and maintain and strengthen its monopoly power at the expense of the competing Center and ASSI;

(e)   AMH is preventing the opening of a new outpatient surgical center, to be partially owned by AMH and managed by Surgical Network, Inc., in Blue Bell, Pennsylvania, by refusing to cooperate in its development and subsequent opening by, for example, inexplicably refusing to

attend meetings of the Board of Directors of the new facility, which are necessary to finalize the opening of the new center; and

(f)     AMH's competitive threat to the Center by its operation of the competing Warminster facility is also done for the purpose of causing the Center to decline financially thereby forcing ASSI to sell its interest in the declining Center to AMH, after which AMH will profit by selling ASSI's interest to other physicians while maintaining a controlling interest in the Center.

61.     AMH's above stated anticompetitive conduct was undertaken to foreclose competition, gain a competitive advantage and diminish or destroy the market share of its competitors, including ASSI.

62.     AMH's anticompetitive conduct serves to significantly contribute to AMH maintaining and strengthening its monopoly power.

63.     These actions were not undertaken for any legitimate business reasons or as part of natural business development, but instead these actions were undertaken in an attempt to willfully acquire sufficient market share to monopolize the market for outpatient surgical procedures and services in the relevant geographic market and there is a dangerous probability that AMH will succeed in obtaining monopoly power unless enjoined from doing so.

64.     Through these actions, AMH acted contrary to its own 50% ownership interest in the Center, which provides outpatient surgical procedures and services in direct competition with the Warminster facility and has and will be economically harmed by the aforesaid actions of AMH.  Accordingly, AMH's actions were not done for any legitimate business reason.

65.     The aforementioned anticompetitive and predatory conduct of AMH will affect interstate commerce by, among other things, reducing the number of outpatient surgical

services available to certain residents of Pennsylvania and neighboring states. For example,

both AMH and the Center provide services to some New Jersey residents.

66.    As a proximate result of defendants' conduct, ASSI has suffered or will continue

to suffer economic damages and irreparable harm that warrants the timely entry of injunctive

relief.

WHEREFORE, Plaintiff ASSI prays as follows:

(a)    That defendants be preliminarily and permanently enjoined from engaging in any
       acts or practices in violation of Section 2 of the Sherman Act as set forth herein;

(b)    That defendants thereafter be permanently enjoined through the entry of a consent
       order for a period of ten years prohibiting defendants from any further violations
       of the federal antitrust laws;

(c)    That the Court adjudge and decree that defendants have attempted to monopolize
       commerce in the market for outpatient surgical procedures and services in
       violation of Section 2 of the Sherman Act;

(d)    That the Court award plaintiff actual and automatic treble damages, pursuant to
       Section 4 of the Clayton Act, 15 U.S.C.§1, in an amount yet to be determined by a
       jury;

(e)    That the Court award plaintiff its reasonable costs and expenses, including
       attorneys' fees, incurred in prosecuting this action, pursuant to Section 4 of the
       Clayton Act, 15 U.S.C.§15; and

(f)    That the Court award such other additional and separate relief as the case
       may require and/or that the Court may deem just and proper under the
       circumstances.

## COUNT II
## MONOPOLIZATION IN VIOLATION OF SECTION 2
## OF THE SHERMAN ACT, 15 U.S.C. §2
### (ASSI v. AMH)

67.    ASSI incorporates herein by reference each and every allegation contained in

paragraphs 1 through 66, as though set forth fully herein.

68.    For purposes of this Verified Complaint, the relevant product market is defined as outpatient surgical procedures and services, including pain, gastrointestinal and medical therapeutic services.

69.    For purposes of this Verified Complaint, the relevant geographic market is defined as Montgomery County and those portions of Bucks and Philadelphia Counties that border Montgomery County.

70.    AMH has monopolized and continues to monopolize the relevant product market in the relevant geographic market through its predatory and anticompetitive forms of conduct herein described.

71.    AMH possesses a dominant share of the market for outpatient surgical procedures and services. AMH's market share is comprised of its increased provision of outpatient surgical procedures and services at AMH, through its equal ownership of the Center, and now complete ownership of the Warminster facility. AMH's combined market share of these three facilities in the relevant geographic market of the relevant product market constitutes a monopoly.

72.    By defendants' own admission, the Center (of which it is 50% owner) is "by far and away the largest and most dominant ASC (Ambulatory Surgical Center) in the two counties (Bucks and Montgomery County)". See Defendants' Memorandum of Law in Support of Motion for Protective Order at p. 9, ftnt 3, filed in Civil Action No. 08-03119 (Monty. Cty.).

73.    AMH has willfully increased and maintained its monopoly power in outpatient surgical procedures and services in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

Its dominant combined market power in the relevant market is likely to increase unless the relief requested is granted.

    74.  For the purpose, and with the actual effect, of maintaining its monopoly in outpatient surgical procedures and services, in violation of Section 2 of the Sherman Act, AMH has engaged in the following predatory and anticompetitive forms of conduct:

    (a)  AMH acquired Warminster Hospital on or about October 1, 2007. By and through this acquisition, AMH maintained dominance in the market and thereby reduced competition for outpatient surgical procedures and services in the relevant geographic market;

    (b)  AMH breached its Partnership Agreement with ASSI by providing competitive outpatient surgical procedures at another acquired facility (i.e. Warminster) within a five mile radius of ASSI, in an effort to expand its market share and prevent other competitors or potential competitors, like ASSI, from acquiring the Warminster facility and as a result maintain and strengthen its monopoly power;

    (c)  AMH breached its fiduciary duty to ASSI by providing outpatient surgical procedures and services at its newly acquired Warminster facility, in direct competition with ASSI in an effort to maintain and strengthen its monopoly power;

    (d)  AMH thereafter undertook conduct intended to lure physicians away from AMH and the Center to Warminster Hospital, subsequently driving physicians and patients and revenue away from the Center and towards AMH's Warminster facility in an attempt to expand AMH's market share and maintain and strengthen its monopoly power at the expense of the competing Center and ASSI;

    (e)  AMH is preventing the opening of a new outpatient surgical center, to be owned partially by AMH and managed by Surgical Network, Inc., in Blue Bell, Pennsylvania by

refusing to cooperate in its development and subsequent opening by, for example, inexplicably refusing to attend meetings of the Board of Directors of the new facility, which are necessary to finalize the opening of the new center; and

(f) AMH's competitive threat to the Center by its operation of the competing Warminster facility is also done by AMH for the purpose of causing the Center to decline financially thereby forcing ASSI to sell its interest in the declining Center to AMH, after which AMH will profit by selling ASSI's interest to other physicians while maintaining a controlling interest in the Center.

75. AMH's anticompetitive conduct was undertaken to foreclose competition, gain a competitive advantage and diminish the market share of its competitors, including ASSI.

76. AMH's anticompetitive conduct serves to significantly contribute to AMH maintaining and strengthening its monopoly power.

77. These actions were not undertaken for any legitimate business reasons or as part of natural business development, but instead these actions were undertaken for the willful acquisition and maintenance of monopoly power in the market for outpatient surgical procedures and services in the relevant geographic market.

78. Through these actions, AMH acted contrary to its own 50% ownership interest in the Center, which provides outpatient surgical procedures and services in direct competition with the Warminster facility and has and will be economically harmed by the aforesaid actions of AMH. Accordingly, AMH's actions were not done for any legitimate business reason.

79. The aforementioned anticompetitive and predatory conduct of AMH affects interstate commerce by, among other things, reducing the number of outpatient surgical

services available to certain residents of Pennsylvania and neighboring states. For example,

both AMH and the Center provide services to some New Jersey residents.

80. As a proximate result of defendants' conduct, ASSI has suffered or will suffer

economic damages and irreparable harm that warrants the entry of injunctive relief.

WHEREFORE, Plaintiff ASSI prays as follows:

(a) That defendants be preliminary and permanently enjoined from engaging in any acts or practices in violation of Section 2 of the Sherman Act as set forth herein;

(b) That defendant thereafter be permanently enjoined through the entry of a consent order for a period of ten years prohibiting defendants from any further violations of the federal antitrust laws;

(c) That the Court adjudge and decree that defendants have attempted to monopolize commerce in the market for outpatient surgical procedures and services in violation of Section 2 of the Sherman Act;

(d) That the Court award plaintiff actual and automatic treble damages, pursuant to Section 4 of the Clayton Act, 15 U.S.C.§1, in an amount yet to be determined by a jury;

(e) That the Court award plaintiff its reasonable costs and expenses, including attorneys' fees, incurred in prosecuting this action, pursuant to Section 4 of the Clayton Act, 15 U.S.C.§15; and

(f) That the Court award such other, additional and separate relief as the case may require and/or that the Court may deem just and proper under the circumstances.

## COUNT III
## BREACH OF CONTRACT
### (ASSI v. AMH)

81. ASSI incorporates herein by reference each and every allegation contained in

paragraphs 1 through 80, as though set forth fully herein.

82. ASSI and AMH entered into a valid and enforceable contract, in the form of a

Partnership Agreement, on July 28, 1989.

83.     The parties formed a partnership for the purpose of developing and operating the

Center.

84.     During the parties' negotiation of the Partnership Agreement, AMH insisted upon

the inclusion of a Noncompetition Clause to prevent ASSI from acquiring, managing or

operating another outpatient surgical center within 5 miles of the Center.

85.     The Noncompetition Clause was drafted and modified by AMH.

86.     The Noncompetition Clause, which is reasonable, clear, unambiguous and binding

on AMH, provides as follows:

(a)     Noncompetition. Each Partner agrees that during the existence of
        the Partnership it will not enter into, manage, operate or otherwise
        participate in any enterprise, including any partnership, joint venture
        or other arrangement, providing outpatient surgery services at any
        location within a radius of five miles of the Center. The foregoing
        shall not apply to the Center and any existing facilities at the date of
        this Agreement, including any subsequent changes, alterations or
        additions to the AMH operating suites, provided that any such
        changes, alterations or additions are not undertaken with the intent,
        or have the effect, of competing in a manner adverse to the Center.
        If the Partnership is dissolved upon the occurrence of an Event of
        Default, then as to the defaulting Partner the provisions of this
        Section 9 shall remain in effect for a period of two years following
        the dissolution of the Partnership.

See Exhibit A at ¶ 9 (emphasis added).

87.     Paragraph 8.1 of the Agreement further obligates the partners to cooperate fully

with each other and act in the best interests of the Partnership: "Each of the parties hereto shall

cooperate fully with one another and shall use its best efforts to develop and operate the Center

as contemplated by this Agreement." Id. at ¶ 8.1 (emphasis added).

88. After AMH acquired Warminster Hospital (on or about October 1, 2007), AMH began providing outpatient surgical procedures and services at its new Warminster site, which is located within approximately 3.2 miles of the Center.

89. AMH's provision of outpatient surgical procedures and services within a five mile radius of the Center constitutes an express and material breach of the Partnership Agreement, and more specifically, paragraphs 9 and 8.1 of that Agreement.

90. On November 30, 2007, ASSI notified AMH, pursuant to Section 8.3 of the Partnership Agreement, that any provision of outpatient surgical procedures and services by AMH at its Warminster site would be a breach of the express terms of the Partnership Agreement.

91. Notwithstanding ASSI's good faith notification and attempt thereafter to have AMH agree to stop its breaching conduct, AMH, in clear, knowing and intentional breach of the Partnership Agreement, has been offering, and continues to offer, outpatient surgical procedures and services at its Warminster site, which is located a mere 3.2 miles from the Center.

92. As a direct and proximate result of AMH's continuous breach of the Partnership Agreement, ASSI has been irreparably harmed and suffered monetary damages, in an amount to be determined at trial.

WHEREFORE, Plaintiff ASSI prays as follows:

(a)     That the Court enter judgment against defendants jointly and severally;

(b)     That defendants be preliminary and permanently enjoined from engaging in any acts or practices in violation of the Partnership Agreement, including providing outpatient surgical procedures and services at its Warminster site;

(c) That an award of compensatory and consequential damages be provided to Plaintiff ASSI in an amount to be determined at trial by a jury;

(d) That the Court award pre-judgment and post-judgment interest, as permitted by law; and

(e) That the Court award such other additional and separate relief as the case may require and/or that the Court may deem just and proper under the circumstances.

## COUNT IV
## BREACH OF FIDUCIARY DUTY
### (ASSI v. AMH)

93.     ASSI incorporates herein by reference each and every allegation contained in

paragraphs 1 through 92, as though set forth fully herein.

94.     By virtue of the Partnership Agreement, AMH and ASSI stand in a fiduciary

relationship to one another.

95.     This relationship gives rise to a fiduciary duty requiring AMH to act for the

benefit of its Partner ASSI and the Center and not to gain individual advantage at the expense

of its partner ASSI or the Center.

96.     In addition, Paragraph 8.1 of the Partnership Agreement mandates that "[e]ach of

the parties hereto shall cooperate fully with one another and shall use its best efforts to develop

and operate the Center as contemplated by this Agreement."

97.     AMH has not acted in accordance with Paragraph 8.1 and has breached its

fiduciary duty to ASSI.

98.     Specifically, AMH's provision of outpatient surgical procedures and services at

its new Warminster site, and conscious decision to act in direct competition with the Center,

not only violates the above "cooperation" provision of the Partnership Agreement, but

constitutes a breach of AMH's fiduciary duty to act in good faith and in the best interests of

ASSI, the Partnership and the Center.

99.   As a direct and proximate result of AMH's continuous breach of its fiduciary

duty, ASSI has been irreparably harmed and suffered and will continue to suffer monetary

damages, in an amount to be determined at trial by a jury.

WHEREFORE, Plaintiff ASSI prays as follows:

(a)   That the Court enter judgment against defendants;

(b)   That defendants be preliminary and permanently enjoined from engaging in any acts or practices in violation of the Partnership Agreement, including providing outpatient surgical procedures and services at its Warminster site;

(c)   That an award of compensatory and consequential damages be provided to Plaintiff ASSI in an amount to be determined at trial by a jury;

(d)   That the Court award pre-judgment and post-judgment interest, as permitted by law; and

(e)   That the Court award such other additional and separate relief as the case may require and/or that the Court may deem just and proper under the circumstances.

## COUNT V
## BREACH OF FIDUCIARY DUTY
### (ASSI v. AMH)

100.   ASSI incorporates herein by reference each and every allegation contained in

paragraphs 1 through 99, as though set forth fully herein.

101.   By virtue of the Partnership Agreement, AMH and ASSI stand in a fiduciary

relationship to one another.

102.   This relationship gives rise to a fiduciary duty requiring AMH to act for the

benefit of its partner ASSI and the Center and not to gain individual advantage at the expense

of ASSI or the Center.

103. In addition, Paragraph 8.1 of the Partnership Agreement mandates that "[e]ach of the parties hereto shall cooperate fully with one another and shall use its best efforts to develop and operate the Center as contemplated by this Agreement."

104. AMH's has not acted in accordance with Paragraph 8.1 and has breached its fiduciary duty to ASSI.

105. Specifically, AMH has materially breached its fiduciary duty to ASSI, and ignored its duty to "cooperate," through conduct intended to lure and divert physicians away from AMH and the Center, towards AMH's new Warminster site, at the expense of the competing Center, of which AMH is a 50% owner.

106. By attempting to lure away such physicians, who would otherwise use the Center to perform outpatient surgical procedures and services, AMH is also driving patients, and revenue, away from the Center to the benefit of the Warminster site owned and operated by AMH.

107. AMH's tortious and outrageous conduct has been, and continues to be, undertaken with a knowing, reckless and intentional disregard of its partner's ASSI's rights.

108. As a direct and proximate result of AMH's continuous tortious conduct, ASSI has suffered irreparable harm and monetary damages, in an amount to be determined at trial by a jury. In addition, AMH's outrageous reckless conduct of luring both physicians and patients away from the Center, which was undertaken in knowing disregard of ASSI's rights, warrants an award of punitive damages to punish and deter AMH from engaging in further similar conduct.

WHEREFORE, Plaintiff ASSI prays as follows:

(a)   That the Court enter judgment against defendants;

(b)   That defendants be preliminary and permanently enjoined from engaging in any
      acts or practices in violation of the Partnership Agreement, including luring away
      physicians and patients, who would otherwise use the Center to perform
      outpatient surgical procedures and services;

(c)   That an award of compensatory and consequential as well as punitive damages be
      provided to Plaintiff ASSI in an amount to be determined at trial by a jury;

(d)   That the Court award pre-judgment and post-judgment interest, as
      permitted by law; and

(e)   That the Court award such other additional and separate relief as the case
      may require and/or that the Court may deem just and proper under the
      circumstances.

## COUNT VI
## VIOLATION OF THE WHISTLEBLOWER LAW
### 43 Pa. Cons. Stat. Ann §§ 1421-1488
### (Mark Etter, M.D. only v. AMH)

109.   Plaintiffs incorporate herein by reference each and every allegation contained in
paragraphs 1 through 108, as though set forth fully herein.

110.   AMH is a "public body" for purposes of the Whistleblower Law because it
receives a variety of funding from both the Commonwealth of Pennsylvania and the federal
government.

111.   Plaintiff Mark Etter M.D., who has served as Chair of AMH's Department of
Anesthesia since 1988 and is paid by AMH for his duties as Chair, is an "employee" of AMH
within the meaning of the Whistleblower Law.

112.   Dr. Etter, through his attorneys, and in good faith, reported in the past 180 days to
his employer and supervisors, including Richard L. Jones, Jr., President and Chief Executive

Officer of AMH, that AMH's predatory and anticompetitive conduct in the relevant outpatient surgical procedures and services market described herein, constitutes a violation of federal antitrust law, specifically, Section 2 of the Sherman Act. Dr. Etter also reported to AMH, within the past 180 days, certain ethical and legal compliance issues concerning the future provision of anesthesia and pain services at AMH's Warminster facility by another anesthesia group, which report he was requested to prepare by Richard Jones and others at AMH, based on his investigation.

113.    AMH's violation of the Sherman Act constitutes a "wrongdoing" for purposes of the Whistleblower Law. AMH's possible violation of the compliance laws also constitutes a "wrongdoing."

114.    Because Dr. Etter has evidence of AMH's wrongdoing, and made a good faith effort to report that wrongdoing to his supervisors, he is a "whistleblower" within the meaning of the Whistleblower Law.

115.    After his good faith reports of AMH's wrongdoing, AMH took, and continues to take, illegal and retaliatory action against Dr. Etter, designed to remove him as Chair of the Department of Anesthesia.

116.    On March 4, 2008, for example, Dr. John J. Kelly, AMH's Chief of Staff and Chief Patient Safety Officer, approached Dr. Etter regarding a March 5, 2008 meeting of AMH's Executive Committee, of which Dr. Etter has been a member since 1986. Dr. Kelly demanded that because of ASSI's potential litigation against AMH, Dr. Etter must recuse himself from portions of the Executive Committee at the will and discretion of the other members.

117. The very next day, Dr. Etter received a letter from Richard Jones who, as noted above, is AMH's President and Chief Executive Officer. In his letter, Mr. Jones stated that because of the potential ASSI litigation, Dr. Etter is being investigated by the Conflict of Interest Sub-Committee of the Audit and Compliance Committee of the Abington Memorial Hospital Foundation Board of Trustees. The letter goes on to state that the "initiation by ASSI of a legal action against AMH could generally adversely influence, or give the appearance of adversely influencing, decisions required to be made by you in your role as Chair of the Department of Anesthesia." On March 11, 2008, Dr. Kelly asked Dr. Etter, on behalf of the Board of Trustees, to take a voluntary leave of absence by March 18, 2008, as Chair of the Department of Anesthesia solely because of the possible litigation between ASSI and AMH. At that time, Dr. Kelly told Dr. Etter that there were no quality issues in the Department, that the Department owed its success to Dr. Etter's leadership since 1988, that he couldn't imagine anyone doing it better and that he had enjoyed working with him over the years. Dr. Kelly stated that if Dr. Etter did not voluntarily take a leave of absence by March 18th, the Board would take action.

118. There is no legitimate or legal basis for AMH's conduct, which includes not only the incidents described above, but other threats to Dr. Etter by AMH management intended to force his removal as Chair of the Department of Anesthesia to prevent him from bringing the instant lawsuit as a shareholder in ASSI.

119. AMH's conduct is clearly retaliatory and illegal, stemming solely from Dr. Etter's report of Sherman Act and other possible ethical and legal compliance violations by AMH, which AMH has disputed and otherwise ignored, largely leading to the instant lawsuit brought by ASSI, in which Dr. Etter is a shareholder.

120.   By taking such illegal and retaliatory action against Dr. Etter, which is proximately related to Dr. Etter's good faith reports of his employer's wrongdoing, AMH has violated the Whistleblower Law and caused Dr. Etter to be injuried.

WHEREFORE, Plaintiff Mark Etter, M.D. prays as follows:

(a)   That the Court enter judgment against AMH;

(b)   That AMH be preliminary and permanently enjoined from threatening or retaliating against Dr. Etter, including attempting to discharge him as Chair of the Department of Anesthia at AMH because of the pendency of the instant lawsuit;

(c)   That an award of actual damages be provided to Plaintiff Mark Etter, M.D. in an amount to be determined at trial by a jury;

(d)   That the Court award pre-judgment and post-judgment interest, as permitted by law;

(e)   That the Court award all, or in the alternative, a portion, of the costs of litigation, including, but not limited to, reasonable attorneys fees and witness fees; and

(f)   That the Court award such other additional and separate relief as the case may require and/or that the Court may deem just and proper under the circumstances.

## JURY DEMAND

A trial by jury is demanded as to all claims seeking non-injunctive relief.

Carl W. Hittinger, Esq. (ID No.: 30250)
Lesli C. Esposito, Esq. (ID No.: 201916)
Matthew A. Goldberg, Esq. (ID No.: 87571)
John D. Huh, Esq. (ID No.: 203230)
**DLA Piper US LLP**
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, Pennsylvania 19103
carl.hittinger@dlapiper.com
T: (215) 656-2449
F: (215) 606-2149

Attorneys for Plaintiffs,
Ambulatory Surgical Services, Inc.
and Mark S. Etter, M.D.

Date:  March 12, 2008

## VERIFICATION

I, Mark S. Etter, M.D., a shareholder of Ambulatory Surgical Services, Inc., state that I am authorized to make this verification on behalf of Plaintiff Ambulatory Surgical Services, Inc., as well as myself; that I have read the foregoing First Verified Complaint; and that the facts set forth therein are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C. S. A. §4904 relating to unsworn falsification to authorities.

_____

Mark S. Etter

Dated:  March 10, 2008

## VERIFICATION

I, Barry L. Glaser, M.D., a shareholder of Ambulatory Surgical Services, Inc., state that I am authorized to make this verification on behalf of Plaintiff Ambulatory Surgical Services, Inc.; that I have read the foregoing First Verified Complaint; and that the facts set forth therein are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C. S. A. §4904 relating to unsworn falsification to authorities.

_____
Barry L. Glaser

Dated: March 11, 2008

PHIL1\3862328.1